No. 22-3835

IN THE
UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT
_____

UNITED STATES OF AMERICA,
*Plaintiff/Appellee,*

v.

THOMAS O'LEAR,

*Defendant/Appellant.*
_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
_____

BRIEF OF APPELLANT O'LEAR
_____

DEBORAH L. WILLIAMS
Federal Public Defender

Kevin M. Schad
Attorney for Appellant
Appellate Director
250 E. Fifth St.
Suite 350
Cincinnati OH 45202
513.929.4834
Kevin_schad@fd.org

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ......................................................................... ii

STATEMENT REGARDING ORAL ARGUMENT ................................. 1

STATEMENT OF THE ISSUES .............................................................. 2

STATEMENT OF THE CASE ................................................................. 3

SUMMARY OF THE ARGUMENT ...................................................... 10

ARGUMENT ......................................................................................... 12

I.    ELIMINATING ALL NON "FULLY VACCINATED" PERSONS
      DEPRIVED O'LEAR OF TRIAL BEFORE A FAIR CROSS-
      SECTION OF THE COMMUNITY ........................................... 12

II.   THE COURT FAILED TO MAKE FINDINGS SUFFICIENT TO
      SUPPORT THE OBSTRUCTION OF JUSTICE ENHANCEMENT ........ 19

III.  THE DISTRICT COURT ERRED IN IMPOSING VULERABLE
      VICTIM ADJUSTMENTS ......................................................... 23

IV.   THE COURT COMMITTED PROCEDURAL ERROR AT
      SENTENCING ......................................................................... 29

V.    THE GOVERNMENT ENGAGED IN VINDICTIVE PROSECUTION
      BY ADDING CHARGES BASED UPON CONDUCT ALREADY
      CHARGED IN THE INDICTMENT, WHICH INCREASED THE
      MANDATORY MINIMUM SENTENCE ..................................... 34

CONCLUSION ...................................................................................... 37

CERTIFICATE OF COMPLIANCE ....................................................... 38

CERTIFICATE OF SERVICE

DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS

## TABLE OF AUTHORITIES

### Cases

*Bordenkircher v. Hayes*, 434 U.S. 357, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978)...................................................................................................36

*Collazo v. Progressive Select Insurance Company,* No. 1:20-cv-25302, ECF #84 (S.D. Fl. Jan. 18, 2022) .........................................17

*Duren v. Missouri*, 439 U.S. 357, 364 (1979)......................................14

*Ford v. Seabold*, 841 F.2d 677, 683 (6th Cir. 1988)............................14

*In re McNulty*, 597 F.3d 344, 351 (6th Cir. 2010)...............................31

*In re Nat'l Prescription Opiate Litig.*, 2021 U.S. Dist. LEXIS 254769, at *86-87 (N.D. Ohio 2021)....................................................17

*Lockhart v. McCree*, 476 U.S. 162, 175 (1986)...................................14

*Molina-Martinez v. United States*, 136 S. Ct. 1338, 1345, 194 L. Ed. 2d 444 (2016)........................................................................................21

*Peters v. Kiff*, 407 U.S. 493, 503 (1972).............................................13

*Taylor v. Louisiana*, 419 U.S. 522, 526 (1975)...................................13

*United States v. Allen*, 160 F.3d 1096, 1102 (6th Cir. 1998) ............14

*United States v. Andrews*, 633 F.2d 449, 454 (6th Cir. 1980).............36

*United States v. Bish*, 835 F. App'x 858, 861 (6th Cir. 2020) ............24

*United States v. Byrd*, 843 F. App'x 751, 756 (6th Cir. 2021).............30

*United States v. Caston*, 851 F. App'x 557, 562 (6th Cir. 2021) .........32

*United States v. Castro*, 960 F.3d 857, 870 (6th Cir. 2020) ...............21

*United States v. Christian*, 804 F.3d 819, 826 (6th Cir. 2015)............27

*United States v. Cox*, 665 F. App'x 457, 461 (6th Cir. 2016)..............25

*United States v. Eggleston*, 823 F. App'x 340 (6th Cir. 2020) ............25

*United States v. Ferguson*, 518 F. App'x 458, 467 (6th Cir. 2013)......30

*United States v. Gates*, 48 F.4th 463, 471 (6th Cir. 2022)..................28

*United States v. Gould*, 30 F.4th 538, 542 (6th Cir. 2022)..................23

*United States v. Gray*, 641 F. App'x 462, 468 (6th Cir. 2016) ...............................31

*United States v. Hills*, 27 F.4th 1155, 1199 (6th Cir. 2022) ...................................19

*United States v. Howell*, 17 F.4th 673, 687 (6th Cir. 2021) ...................................34

*United States v. Iossifov*, 45 F.4th 899, 923 (6th Cir. 2022) ..................................19

*United States v. LaDeau*, 734 F.3d 561 (6th Cir. 2013) ...................................35, 36

*United States v. Moon*, 513 F.3d 527, 541 (6th Cir. 2008)....................................26

*United States v. Mosley*, 53 F.4th 947, 960 (6th Cir. 2022)..................................29

*United States v. Ozomaro*, 44 F.4th 538, 547 (6th Cir. 2022)...............................19

*United States v. Riccardi*, 989 F.3d 476, 481 (6th Cir. 2021) ...............................24

*United States v. Rosales*, 990 F.3d 989, 1000 (6th Cir. 2021) ..............................24

*United States v. Skouteris*, 51 F.4th 658, 671 (6th Cir. 2022)..............................29

*United States v. Small*, 988 F.3d 241, 257 (6th Cir. 2021)...................................24

*United States v. Suarez*, 263 F.3d 468, 480 (6th Cir. 2001) ..................................35

*United States v. Suggs*, 531 F' Appx. 609, 618 (6th Cir. 2013) .......................12

*United States v. Walls*, 293 F.3d 959, 970 (6th Cir. 2002)....................................34

**Statutes**

28 U.S.C. § 1861..................................................................................................13

**Other Authorities**

*, Next Pre-Trial Question for Jurors: Are you Vaccinated?*, U.S.
Law Week (May 21, 2021 4:45AM) ..................................................17

Am. General Order No. 2020-08-12, at 2 (April 5, 2022) ...................17

*Least Vaccinated U.S. Counties Have Something in Common:
Trump Voters*, New York Times (April 17, 2021) ...........................16

N.D. Ohio Juror Selection Plan, Parts C, D (Apr. 8, 2021)...............17

*The influence of political ideology and trust on willingness to
vaccinate*, PLOS ONE (January 25, 2018) .....................................16

*The Vaccine Class Gap*, New York Times (May 24, 2021)................16

U.S.S.G. § 3A1.1(b)............................................................................26

U.S.S.G. § 6A1.3(a) ............................................................................32

## JURISDICTIONAL STATEMENT

This appeal follows from the district court's judgment imposing a sentence of 180 months imprisonment after a jury trial. (R.69, Judgment, PAGE ID # 695) The district court had subject matter jurisdiction pursuant to 18 U.S.C. § 3231, which grants original jurisdiction to district courts over offenses against the laws of the United States. Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1291.  A timely notice of appeal was filed on October 3, 2022. (R.71, Notice of Appeal PAGE ID # 707)

## STATEMENT REGARDING ORAL ARGUMENT

Appellant O'Lear requests oral argument, as his fair cross-section claim is one of first impression with this Court.

Respectfully requested,

 /s/ *Kevin Schad*
Kevin M. Schad
Attorney for Appellant

## STATEMENT OF THE ISSUES

1. The district court should not have removed all "non fully vaccinated" persons from the jury venire.

2. The district court failed to make findings sufficient to impose an obstruction of justice enhancement based upon O'Lear's trial testimony.

3. The district court erred in imposing vulnerable victim adjustments.

4. The district court committed procedural error at sentencing by failing to make adequate findings in support of the sentence imposed.

5. The Government engaged in vindictive prosecution by adding aggravated identity theft charges due to O'Lear's refusal to take a plea agreement.

## STATEMENT OF THE CASE

Appellant Thomas O'Lear and his wife Nicole formed Portable Radiology Services (PRS) in 2005 to provide portable x-ray services to individuals and facilities. Among their customers were nursing homes, such as McKinley and The Pines, both located in the Canton, Ohio area. In 2016, CareSource, a Medicaid payor, flagged some of PRS's billings for having inadequate paperwork. (R.92, Trial PAGE ID # 1040) As a result of this investigation, PRS provided on two occasions paperwork supporting the billings. That paperwork was fraudulent (R.95, Trial PAGE ID # 1750), and led to a federal investigation.

On June 4, 2019, a 26-count indictment was filed in the Northern District of Ohio charging Appellant O'Lear with: 25 counts of healthcare fraud, in violation of 18 U.S.C. § 1347, and one count of making a false statement relating to healthcare matters, in violation of 18 U.S.C. § 1035(a). (R.1, Indictment PAGE ID # 1) There were several delays in the proceedings, some due to COVID-19 court closures, and some due to the need to review discovery. On January 21, 2021, defense counsel disclosed that they could not meet with O'Lear to review discovery, due to office policies on meeting face to face with clients. The parties also discussed the status of plea negotiations.

On August 24, 2021, the court held a Lafler hearing, where the Government indicated that discovery was complete, and outlined to the court the plea offer. (R.101, Hearing PAGE ID # 2059)  On September 9, 2021, the court held another hearing where the plea offer was discussed.  The Government informed the court and defense that if O'Lear did not accept the plea, they would likely supersede the indictment to add aggravated identity theft charges, which carry two-year mandatory consecutive sentences. (R.90, Pretrial PAGE ID # 855)  A superseding indictment was filed on October 28, 2021, adding two counts of aggravated identity theft (18 U.S.C. § 1028A) in addition to the original charges. (R.27, Superseding Indictment PAGE ID # 99)

O'Lear persisted in his not guilty plea, and on April 4, 2022 a jury was selected.  The Government began its case in chief on April 19, calling Elizabeth Leeper, director of nursing for McKinley Healthcare.  She testified as to the process that x-rays were ordered through O'Lear's business and identified numerous documentation from her patients.  She was shown records which did not seem to make sense with their records; for instance, there were x-ray billings for patient Eller made while Eller was in hospice and would not have needed x-rays. (R.92, Trial PAGE ID # 1018)  As another example, there

were records of patient White being x-rayed at McKinley at the same him he was not at the facility, but at a hospital. (R.92, Trial PAGE ID # 1020)

Anne Marie-Scalfini worked for CareSource, a managed care organization that handles Medicare and Medicaid benefits for its members. (R.92, Trial PAGE ID # 1035)  Scalfini worked as a program integrity investigator, looking at potential fraud claims.  PRS got flagged in 2016 for submitting excessive billing and billing without supporting documentation.  As a result, Scalfini communicated with O'Lear and asked for specific underlying documentation, which was provided in two parts. (R.92, Trial PAGE ID # 1047)  She reviewed the documentation, and testified as to the problems with the documentation, including: some documentation showing male patients, but x-rays with female organs; multiple x-rays that were identical with different names on them; and identical images submitted on different dates. (R.92, Trial PAGE ID # 1061-1082)

Jeremy Buening is a special agent for Health and Human Services and was the case agent for the federal criminal investigation.  He first became acquainted with the case while he worked for the Ohio Medicaid fraud unit.  Buening testified as to the documents signed by O'Lear in conjunction with billing Medicaid and record keeping requirements.  Buening also testified as to

his search of PRS's offices and O'Lear's home, and the documents found. Buening provided, as an example, that from April 2, 2017 to June 12, 2017, 30 x-rays were allegedly performed on one patient. (R.92, Trial PAGE ID # 1119) Buening stated that a review of patient Kidd's records showed that out of 178 claims made, only 2 had supporting documentation.

Buening also interviewed O'Lear at the time his house was searched. During that interview, O'Lear admitted that he did "100%" of the billing for PRS (R.92, Trial PAGE ID # 1136), and O'Lear explained to him the forms used, and the process for billing.  As to the CareSource audit, O'Lear admitted he provided the documentation to CareSource, and that he made have slightly altered the original documents, but only to make them more legible. (R.93, Trial PAGE ID # 1162)

Dr. Zaldivar was the person who acted as radiologist for PRS from 2008 to 2016.  Zaldivar testified he did his own billing to Medicaid, and that PSR did not bill for his services. (R.93, Trial PAGE ID # 1275)  He never received an x-ray from PRS without a date and patient name.  During his tenure at PRS, he averaged reading 10 to 20 x-rays at a time. (R.93, Trial PAGE ID # 1273)

The Government also brought in former employees of PRS. They were shown documents they purportedly prepared but denied preparing or signing them. Each of the former employees indicated that from 2013 to 2016, business slowed. (R.93, Trial PAGE ID # 1223) Despite this, Buening testified that PRS's Medicaid claims doubled each year from 2013 to 2016, including 11681 claims in 2016 versus 2000 in 2013. (R.96, Trial PAGE ID # 1841)

One former employee who testified was Brien Fletcher. Fletcher was fired by O'Lear a couple of months after the CareSource audit. (R.93, Trial PAGE ID # 1320) Fletcher testified that Zaldivar usually asked for two x-ray shots. Fletcher denied helping with the CareSource audit, and denied he authored certain forms filled out in his name. (R.95, Trial PAGE ID # 1826-1828)

The Government presented an FBI forensic accountant (Michael Beckwith) and a private forensics accountant (Michael Petron). Their testimony attempted to show fraudulent billings from PRS, which they calculated at 1.4 to 2 million. (R.94, Trial PAGE ID # 1504) They also presented evidence from PRS business accounts which showed significant sums being paid from that account to suppliers to build and furnish O'Lear's new home. (R.94, Trial PAGE ID # 1526) This included a cashier's check for

7

$194,000 which went to a builder.    Accountant Beckwith testified that 90% of PRS's business income was from Medicaid.

Mr. O'Lear testified in his own defense.  He denied forging any signatures or creating any false documents. (R.95, Trial PAGE ID # 1557)  He admitted to doing the payroll and billing for PRS, but indicated he needed to rely on his staff in the field to give him accurate information to bill.  When CareSource contacted him for source information for billings, he assigned Fletcher to prepare the documents, and sent them along without reviewing them. (R.95, Trial PAGE ID # 1615)  While he admitted that he submitted bills for work not done, he did not knowingly do so. (R.95, Trial PAGE ID # 1710)  O'Lear testified that Fletcher was forging documentation, and that is why he was fired. (R.95, Trial PAGE ID # 1632)

After several days of deliberation, O'Lear was convicted on all counts except three specific healthcare fraud counts (from 7.28.17 and 7.31.17). (R.57, Jury Verdict PAGE ID # 627)   O'Lear appeared for sentencing on September 29, 2022.  The parties agreed, and the district court accepted an adjusted loss figure of $1.9 million.  O'Lear objected to vulnerable victim enhancements made pursuant to U.S.S.G. § 3A1.1(b), arguing he did not use or target vulnerable victims.  The court denied this objection, finding:

> The evidence at the trial was clear that the victims of
> the overall fraud, which included the health care
> fraud, the false statements, and, in particular, the
> aggravated identity theft, included many individual
> victims of nursing homes. They were all elderly and
> dependent. That's why they were in nursing homes.
> And the evidence showed that many of them, in
> addition, had some mental disabilities and Mr. O'Lear
> took advantage of them, their identities. There are
> photographs, which actually were particularly
> revealing, and he misused their identities as part of
> this scheme, so I heard plenty of evidence that
> convinces me that both of those enhancements should
> apply.
>
> (R.87, Sentencing PAGE ID # 775)

The court determined that the advisory Guidelines range was 188-235 months

(base offense level 36, criminal history I), plus a consecutive two-year term for

the aggravated identity theft charges. (R.87, Sentencing PAGE ID # 776)

After hearing arguments from both sides, as well as "victim" statements from

two of O'Lear's previous employees, the court imposed a total sentence of 180

months, consisting of 156 months on the underlying charges, and a

consecutive 24-month term for the identity theft charges. (R.69, Judgment

PAGE ID # 696)

## SUMMARY OF THE ARGUMENT

### I.

Before trial, the district court imposed an order removing from jury consideration any otherwise eligible persons who had not been "fully vaccinated." This had the effect of excluding 40% of the potential jury pool and violated O'Lear's right to a jury of his peers and a fair cross section of the community.

### II.

O'Lear testified at trial. As sentencing, the court imposed an obstruction of justice enhancement based upon that testimony; however, the court failed to identify specific statements made by O'Lear it was relying upon. Further, the court made no perjury findings. As such, the enhancement on this basis was improper.

### III.

The Medicaid system is the victim of O'Lear's charged offenses. It was therefore reversible error to determine, at sentencing, that other individuals were "victims" for purposes of the vulnerable victim enhancements.

IV.

At sentencing, the court committed procedural error by not making adequate findings regarding 18 U.S.C. § 3553(a) factors, and by considering a witness as a "victim" when they were not.

V.

When O'Lear refused to accept a plea agreement whose only benefit was a reduction for acceptance of responsibility, the Government responded by adding two aggravated identity theft charges which contained a consecutive mandatory minimum term. The facts underlying those charges had already been plead in the indictment; therefore, adding these charges was vindictive.

## ARGUMENT

I.    **ELIMINATING ALL NON "FULLY VACCINATED" PERSONS DEPRIVED O'LEAR OF TRIAL BEFORE A FAIR CROSS-SECTION OF THE COMMUNITY**

Prior to trial, the district court entered an order requiring all potential jurors sitting in the venire to be "fully vaccinated." This order was both vague and improperly denied O'Lear a fair cross section of the community.

### Standard of Review

"Whether a defendant has been denied his right to a jury selected from a fair cross-section of the community is a mixed question of law and fact, which we review *de novo*." *United States v. Suggs*, 531 F' Appx. 609, 618 (6th Cir. 2013) (emphasis in original).

On January 24, 202, the district court provided notice to the parties for the first time it intended to seat jurors only if individuals have been vaccinated against COVID-19. (R.__, Order [non-document] January 24, 2022) O'Lear timely objected to this order, arguing that excluding unvaccinated jurors violated his constitutional and statutory right to have a jury made up of a fair cross-section of the community. (R.32, Objection PAGE ID # 169) The district court denied this objection, finding "[b]ecause unvaccinated jurors are

not a 'distinctive group,' selecting jurors from only vaccinated individuals does not deprive O'Lear of any constitutional rights." (R.35, Order PAGE ID # 185)

"[T]he American concept of the jury trial contemplates a jury drawn from a fair cross section of the community." *Taylor v. Louisiana*, 419 U.S. 522, 526 (1975); *see also* 28 U.S.C. § 1861 (providing that "all litigants in Federal courts entitled to trial by jury shall have the right to grand and petit juries selected at random from a fair cross section of the community."). This foundational principle is severely undermined if 30 to 40 percent of the eligible population is removed from the jury pool—for any reason. See *Peters v. Kiff*, 407 U.S. 493, 503 (1972) ("the exclusion from jury service of a substantial and identifiable class of citizens has a potential impact that is too subtle and too pervasive to admit of confinement to particular issues or particular cases"). If the 30–40 percent cohort were removed at random, the remaining pool might still reflect a fair cross section of the community. But wholesale removal of all unvaccinated individuals is a far cry from random removal of persons from the pool. The size of O'Lear's jury pool was not only reduced, but it was slanted in ways that affected his right to a fair and impartial jury.

13

The fair cross section requirement is violated when: (1) "a distinctive group, that is, a cognizable group, was excluded from the jury selection process"; (2) "such group was systematically excluded"; and (3) because of such exclusion the jury pool failed to be reasonably representative of the community." *United States v. Allen*, 160 F.3d 1096, 1102 (6th Cir. 1998) (internal quotation marks omitted); *see also Duren v. Missouri*, 439 U.S. 357, 364 (1979).

Unvaccinated jurors are a distinctive group. Distinctive groups not based on gender, race, ethnicity, or religious affiliation require some evidence of "a common thread or basic similarity in attitude, ideas or experiences." *Ford v. Seabold*, 841 F.2d 677, 683 (6th Cir. 1988). While the Supreme Court has declined to define "distinctive group," it has found that "the concept of 'distinctiveness' must be linked to the purposes of the fair-cross-section requirement," which are "(1) guarding against the exercise of arbitrary power and ensuring that the commonsense judgement of the community will act as a hedge against the overzealous or mistaken prosecutor, (2) preserving public confidence in the fairness of the criminal justice system, and (3) implementing our belief that sharing in the administration of justice is a phrase of civic responsibility." *Lockhart v. McCree*, 476 U.S. 162, 175 (1986).

Statewide data establishes that the vaccinated population differs from the unvaccinated population in key demographic metrics. Data collected in January of 2022—around the time the district court stated it would only seat vaccinated jurors—shows the vaccinated population differed from the unvaccinated population by race (White: 53.94% vaccinated; Black: 41.39%; Asian 73.31%); by sex (Female: 58.69%; Male 52.17%); and by age (e.g. 70-74: 88.09%; 20-29: 49.255). *United States v. Cole*, NDOH Case No. 1:20-cr-00424, R.134, PAGE ID #1833.) County-level data collected during that same time establishes that vaccination rates varied geographically. Take for instance a comparison between Cuyahoga and Trumbull Counties. *Id.* (showing total, 18+ vaccination rate in Cuyahoga County of 61.10% compared to 51.01% in Trumbull County). More concerning is that racial disparities were exacerbated at the county-level within the most populous counties in Ohio's Northern District. *Id* at PAGE ID #1833-1834 (showing the White population in Cuyahoga County is 63.22% vaccinated compared to the Black population which is 40.64% vaccinated).

These demographic differences in vaccination rates are compounded by evidence that vaccination rates also break down along political lines and correlates to core opinions and bias, including skepticism towards information

15

provided by the Government. Danielle Ivory, Lauren Leatherby & Robert Gebeloff, *Least Vaccinated U.S. Counties Have Something in Common: Trump Voters*, New York Times (April 17, 2021); *see also* Bert Baumgaertner, Juliet E. Carlisle & Florian Justwan, *The influence of political ideology and trust on willingness to vaccinate*, PLOS ONE (January 25, 2018). A study conducted by the University of Idaho and published on the National Institute of Health website found "that ideology has a direct effect on vaccine attitudes" and "[t]he ideology variable predicts an indicator capturing trust in government medical experts." Baumgaertner et. al. *supra* at 1. Another study from the Kaiser Family Foundation and cited in the media has found that partisanship is an important indicator in predicting COVID-19 vaccination status. David Leonhardt, *The Vaccine Class Gap*, New York Times (May 24, 2021).

The district court's decision to seat a jury comprised solely of vaccinated individuals altered the demographic and ideological composition of the jury pool so it was not representative of the community at large. This erodes public confidence in the fairness of the criminal justice system. At least one court in the Northern District of Ohio reconsidered its initial order to seat only vaccinated individuals and reversed itself on these grounds. *In re Nat'l Prescription Opiate Litig.*, 2021 U.S. Dist. LEXIS 254769, at *86-87 (N.D. Ohio

16

2021); *see also Collazo v. Progressive Select Insurance Company,* No. 1:20-cv-25302, ECF #84 (S.D. Fl. Jan. 18, 2022) (delaying trial until May after defendant objected to plan to exclude unvaccinated jurors).

Moreover, the district court was not required to take this action. A vaccination requirement was not mandated by any statute, rule, or policy. The Administrative Office of the U.S. Courts issued a statement to a reporter providing that, "[w]hile courts may ask jurors COVID-19 related questions as part of their safety protocols, providing litigants with a jury selected at random from a fair cross section of the community remains of the greatest importance." Madison Adler*, [Next Pre-Trial Question for Jurors: Are you Vaccinated?](),* U.S. Law Week (May 21, 2021 4:45AM). The Northern District of Ohio's Juror Selection Plan did not require COVID-19 vaccinations for jurors but instructs that "upon entering [the] federal courthouse, all persons, *regardless of vaccination status*, must comply with the rules and requirements . . . regarding face covering and physical distancing. *See* [Am. General Order No. 2020-08-12, at 2 (April 5, 2022)]() (emphasis added); *see also* U.S Dist. Ct., [N.D. Ohio Juror Selection Plan, Parts C, D (Apr. 8, 2021)]() (stating policy of random selection from fair cross section of the community in each division and requirement that "all citizens resident within the District

shall have the opportunity to be considered for service on grand and petit juries and shall have an obligation to serve as jurors when summoned for that purpose").

The district court's decision to exclude unvaccinated individuals slanted the attitudes and opinions in the jury panel and resulted in a jury pool statistically not reasonably representative of the community. Thus, the district court violated O'Lear's constitutional and statutory right to a jury representative of a fair cross section of the community.

## II.    THE COURT FAILED TO MAKE FINDINGS SUFFICIENT TO SUPPORT THE OBSTRUCTION OF JUSTICE ENHANCEMENT

The district court imposed an obstruction of justice enhancement based upon O'Lear's trial testimony.  The court failed to make sufficient findings to support the enhancement.

### Standard of Review

"We review de novo the determination of whether specific facts constitute an obstruction of justice." *United States v. Ozomaro*, 44 F.4th 538, 547 (6th Cir. 2022).

An enhancement under U.S.S.G. § 3C1.1 "requires particularized findings that the defendant 'willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction." *United States v. Hills*, 27 F.4th 1155, 1199 (6th Cir. 2022).  "The government bears the burden of proving by a preponderance of the evidence that the enhancement applies." *United States v. Iossifov*, 45 F.4th 899, 923 (6th Cir. 2022).

The district court imposed the U.S.S.G. § 3C1.1 enhancement based upon a finding that O'Lear lied during his trial testimony. The district court found:

> I'm applying it because, as reflected in the presentence report, I have determined that Mr. O'Lear lied on the stand. He – he could have put the Government to its proof, that was his constitutional right. He could have challenged the Government's evidence. But he, in my opinion, concocted a story blaming the fraud on another employee, Brien Fletcher. He blamed Mr. Fletcher for the whole scheme, a man who earned, at most, 20 or $25,000 a year, didn't get the benefit of any of this nearly $2 million of fraudulent billing. And Mr. O'Lear testified, after I administered the oath to tell the truth, the whole truth, and nothing but the truth, that the whole thing was on Mr. Fletcher. So I've concluded that was a bald-faced lie and that's why I've applied the two-level enhancement.

(R.87, Sentencing PAGE ID # 784)

These findings suffer from two problems. First, they are not particularized enough to support the enhancement. "When a defendant objects to the application of an obstruction enhancement based on his trial testimony, the sentencing court 'must identify those particular portions of the defendant's testimony that it considers to be perjurious,' and 'must either make specific findings for each element of perjury or at least make a finding that

20

encompasses all of the factual predicates for a finding of perjury.'" *United States v. Castro*, 960 F.3d 857, 870 (6th Cir. 2020). The district court did not do this. The court did not identify specific testimony, from the record, supporting the enhancement. Further, the court made no findings regarding any elements of perjury. The lack of specific findings requires vacation of the sentence imposed.

Second, to the extent that they are premised on the fact that O'Lear "blamed Mr. Fletcher for the whole scheme," that finding is not supported by the record. Although O'Lear testified that Mr. Fletcher, and not he, prepared documentation sent to CareSource, this does not equate with O'Lear blaming Fletcher for the "whole scheme." O'Lear testified that he was not blaming Fletcher for the whole fraud. (R.95, Trial PAGE ID # 1654)

The findings by the district court are insufficient to support the U.S.S.G. § 3C1.1 enhancement. "When a defendant is sentenced under an incorrect Guidelines range—whether or not the defendant's ultimate sentence falls within the correct range—the error itself can, and most often will, be sufficient to show a reasonable probability of a different outcome absent the error." *Molina-Martinez v. United States*, 136 S. Ct. 1338, 1345, 194 L. Ed. 2d 444 (2016). Without the two-level enhancement, O'Lear's advisory range would drop from

21

188-235 months to 151-188.  As the court imposed a downward variance at the original sentencing, a new sentence would likely be less than the 156-month sentence imposed on the Medicaid fraud counts originally.  Therefore, resentencing is necessary.

## III.   THE DISTRICT COURT ERRED IN IMPOSING VULERABLE VICTIM ADJUSTMENTS

The district court erred in applying two separate vulnerable victim adjustments, as the persons alleged to be vulnerable victims were not a "victims" of the offenses of conviction.  Further, the Government did not present evidence that the offense involved a "large number" of victims.

### Standard of Review

Preserved challenges to the calculation of the Sentencing Guidelines are reviewed under a two-part process: the legal interpretation of a Guideline is reviewed de novo, while the district court's application of the Guideline to the facts is reviewed for abuse of discretion. *United States v. Gould*, 30 F.4th 538, 542 (6th Cir. 2022).

At sentencing, the district court increased the advisory base offense level by four levels: two levels pursuant to U.S.S.G. § 3A1.1(b)(1), and two levels under subsection (b)(2).  Neither enhancement applies.  As to the (b)(1) enhancement, application requires an expansion of the terms "victim" and "offense."  As to the (b)92) enhancement, the Government did not present evidence that the number of victims was "large."  As such, resentencing is necessary.

23

"In reviewing for procedural reasonableness, a district court abuses its
discretion if it commits a significant procedural error, such as failing to
calculate (or improperly calculating) the Guidelines range, treating the
Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a
sentence based on clearly erroneous facts, or failing to adequately explain the
chosen sentence . . .." *United States v. Small*, 988 F.3d 241, 257 (6th Cir.
2021).  "A misinterpretation of a guideline can result in a procedurally
unreasonable sentence." *United States v. Riccardi*, 989 F.3d 476, 481 (6th Cir.
2021).  This is true even where the ultimate sentence falls within the correct
Guidelines range. *United States v. Rosales*, 990 F.3d 989, 1000 (6th Cir. 2021).
Sentences predicated on Guidelines miscalculations are procedurally
unreasonable. *United States v. Bish*, 835 F. App'x 858, 861 (6th Cir. 2020).

O'Lear was convicted of defrauding Medicaid.  The Government alleged
that O'Lear made false billing to get money from Medicaid for which he was
not entitled.  Medicaid was the target, Medicaid paid the money to O'Lear's
company, and Medicaid was due the restitution.  At sentencing, however, the
Government contended that the names used to bill for non-existent services
were the victims, and, because they lived in a nursing home, they were
vulnerable.  This was error.

The court legally erred by determining Medicaid recipients were victims of this healthcare fraud.  The judgment filed lists Medicaid (along with a small amount to two private insurers) as the victims entitled to restitution. (R.69, Judgment PAGE ID # 700)  The superseding indictment likewise alleged that the scheme to defraud was targeted to Medicaid. (R.27, Superseding Indictment PAGE ID # 107)  "The enhancement for vulnerable victims focuses on the choice of victims." *United States v. Cox*, 665 F. App'x 457, 461 (6th Cir. 2016).  The persons identified as victims (the Medicaid recipients whose names were used) were not targeted by the scheme, nor were they in danger of any pecuniary loss as a result of the scheme.  They were not chosen – Medicaid was chosen.  The persons relied upon by the district court were not victims pursuant to U.S.S.G. § 3A1.1(b).

In *United States v. Eggleston*, 823 F. App'x 340 (6th Cir. 2020), a case somewhat analogous to this case, the defendant was convicted of Medicare fraud relating to home healthcare kickbacks.  As here, the defendant argued on appeal that Medicare, not the individual patients, were the victims, and therefore, U.S.S.G. § 3A1.1(b) could not apply.  The defendant, however, was laboring under a plain error standard of review, as he had not raised the issue below.  This Court found "we do not appear to have addressed this question"

25

and therefore "[t]he lack of binding Sixth Circuit case law and other circuits' rejection of Eggleston's argument means that the district court did not plainly err in applying the enhancement." *Id.* at 349. Accord *United States v. Moon,* 513 F.3d 527, 541 (6th Cir. 2008)(finding that Medicaid recipients could be considered a "large number of victims" under a plain error standard).

O'Lear is not under plain error review – he preserved this issue in the court below. The language of U.S.S.G. § 3A1.1(b) contemplates individual victims, not an entity such as Medicaid. (Compare language of the Guideline to U.S.S.G. § 3A1.2 Application Note 1, which distinguishes between individual and organizational victims). The Government's efforts were designed to prove that O'Lear defrauded Medicaid. That patient's information was used to help carry out that fraud does not convert them into victims solely for the purpose of U.S.S.G. § 3A1.1(b).

O'Lear would also note that the court utilized erroneous evidence from counts not related to the healthcare fraud to support this enhancement. The court utilized "in particular the aggravated identity theft" evidence to apply the enhancement. (R.87, Sentencing PAGE ID 775) However, the aggravated identity theft victims were physician Dean DePerro and radiology technologist Christy Donofrio. (R.27, Superseding Indictment PAGE ID # 112-113) There

26

was no evidence that either person was a "vulnerable victim," therefore, the court's reliance on this evidence also renders the enhancement improper.

O'Lear further submits that his enhancement pursuant to U.S.S.G. § 3A1.1(b)(2) for the offense involving a "large number" of vulnerable victims fails for two reasons. First is the fact that, as argued above, Medicaid was the victim – therefore, there is not a "large number" of victims. But moreover, the record does not reflect what number, or whom the court relied on to make this finding. The court only generally refers to "many individual victims of nursing homes" with no detail. (R.87, Sentencing PAGE ID # 775) This finding cannot support the additional two-level enhancement. See *United States v. Christian*, 804 F.3d 819, 826 (6th Cir. 2015).

Finally, O'Lear can prove prejudice. Without these two enhancements, O'Lear's advisory Guidelines range drops from 188-235 to 121-151 months. O'Lear's 156-month sentence on the healthcare fraud counts would thus be an upward variance from the Guidelines. Given the court imposed a downward variance from the incorrect Guidelines, it seems unlikely this error is harmless. "The burden is on the government to prove 'with certainty' that the district court would have imposed the same sentence had the Guidelines had

been properly calculated." *United States v. Gates*, 48 F.4th 463, 471 (6th Cir. 2022). They cannot do so here; therefore, resentencing is required.

## IV.    THE COURT COMMITTED PROCEDURAL ERROR AT SENTENCING

The district court committed reversible procedural err at sentencing by not making adequate findings of fact to support the sentence imposed, and by allowing former employees of PRS to testify as "victims" at the sentencing hearing. The court's errors denied O'Lear a fair sentencing proceeding.

### Standard of Review

"[U]npreserved procedural challenges are reviewed for plain error." *United States v. Skouteris*, 51 F.4th 658, 671 (6th Cir. 2022).

"To impose a procedurally reasonable sentence, a district court 'must properly calculate the guidelines range, treat that range as advisory, consider the sentencing factors in 18 U.S.C. § 3553(a), refrain from considering impermissible factors, select the sentence based on facts that are not clearly erroneous, and adequately explain why it chose the sentence.'" *United States v. Mosley*, 53 F.4th 947, 960 (6th Cir. 2022)(internal citation omitted).

### A. Failure to make findings sufficient to support the sentence imposed

O'Lear first submits that the district court did not adequately explain the chosen sentence sufficient to allow appellate review.

"The general rule is that the district court 'must adequately explain the chosen sentence to allow for meaningful appellate review and to promote the perception of fair sentencing.' [ ] This involves considering the § 3553(a) factors." *United States v. Byrd*, 843 F. App'x 751, 756 (6th Cir. 2021).  "The sentencing judge need not list each of the § 3553(a) factors. But the record must show that the judge actually considered those factors.  . . . . while something less than a factor-by-factor recitation is acceptable, something more than a simple and conclusory judicial assertion that the court has considered 'the nature and circumstances of the offense and the history and characteristics of the defendant' is essential." *United States v. Ferguson*, 518 F. App'x 458, 467 (6th Cir. 2013).

Here, the district court's findings were very abbreviated.  Although the court mentioned the PSR and the term "3553 factors" (R.87, Sentencing PAGE ID 805), the court did not review any of those factors or apply them to the facts relating to O'Lear or the offense.  Instead, the court noted the time the Government advocated for, the amount requested by the defense, and then just chose a number, with no underpinning.  The lack of findings renders the sentence imposed procedurally unreasonable.

30

## B. Mislabeling witnesses as "victims"

Next, O'Lear submits that the court committed procedural error by allowing the Government to present witnesses as "victims" when they were not.

Federal Criminal Rule 60(a)(3) provides that "the court must permit a victim to be reasonably heard at any public proceeding in the district court concerning release, plea, or sentencing involving the crime."  Pursuant to the Crime Victim's Rights Act, a victim is someone who is "directly and proximately harmed" by the defendant's crimes. *United States v. Gray*, 641 F. App'x 462, 468 (6th Cir. 2016).  "In making this determination, we must (1) look to the offense of conviction, based solely on facts reflected in the jury verdict or admitted by the defendant; and then (2) determine, based on those facts, whether any person or persons were 'directly and proximately harmed as a result of the commission of [that] Federal offense.'" *In re McNulty*, 597 F.3d 344, 351 (6th Cir. 2010).

At sentencing, the Government presented live statements from Christy Donofrio and Nicole Wright, two former employees of PRS.  These witnesses were presented as victims of the offenses of conviction, and thus were not

offered for cross examination by the defense.  They did not give statements about the offenses of conviction but informed the court that O'Lear was a bad employer who did not give them good equipment to do their jobs. (R.87, Sentencing PAGE ID # 777-779)

At least one of these two employees was not a victim and should not have been considered as such by the court.  Wright had no harm which was proximately caused by the Medicaid fraud.  Admittedly, the court could have considered the information presented by the two employees as evidence.  A court can "consider all 'relevant information without regard to its admissibility under the rules of evidence' as long as the 'information has sufficient indicia of reliability to support its probable accuracy." *United States v. Caston*, 851 F. App'x 557, 562 (6th Cir. 2021), U.S.S.G. § 6A1.3(a).  However, O'Lear would have had an opportunity to cross-examine them, and refute the evidence.

Using this evidence was not harmless.  The court specifically mentioned this evidence in its imposition of sentence. (R.87, Sentencing PAGE ID # 804)("Your wife and children and friends are experiencing one Thomas O'Lear, and your employees and all the evidence I heard at the trial about what you did at work, that's a different Thomas O'Lear.")  Therefore, admission of this

32

evidence as "victim" evidence was not harmless.  The sentence should be

vacated, and this matter remanded for a new sentencing proceeding.

## V.    THE GOVERNMENT ENGAGED IN VINDICTIVE PROSECUTION BY ADDING CHARGES BASED UPON CONDUCT ALREADY CHARGED IN THE INDICTMENT, WHICH INCREASED THE MANDATORY MINIMUM SENTENCE

The district court held several pretrial hearings discussing plea options for O'Lear.  Each time, O'Lear rejected those options.  During the September 9, 2021 hearing, The Government informed the court that if O'Lear did not accept a plea, they were going to add charged of aggravated identity theft based upon the pending charges.  O'Lear did not plead, and they added the charges.  This was a vindictive use of the Government's charging authority.

### Standard of Review

Because this issue was not raised in the court below, review is for plain error. *United States v. Walls*, 293 F.3d 959, 970 (6th Cir. 2002).

"[A] vindictive prosecution challenge requires a defendant to show that: '(1) the prosecutor has some stake in deterring the [defendant's] exercise of his rights and (2) the prosecutor's conduct was somehow unreasonable,' then the district court may find that there is a 'reasonable likelihood of vindictiveness' and may presume an improper vindictive motive." *United States v. Howell*, 17 F.4th 673, 687 (6th Cir. 2021).  O'Lear submits that the Government's decision to increase the minimum mandatory sentence was an

34

unreasonable act of vindictiveness which requires vacation of the aggravated identity theft counts of the superseding indictment.

"[A] potentially vindictive superseding indictment must add additional charges or substitute more severe charges based on the same conduct charged less heavily in the first indictment." *United States v. Suarez*, 263 F.3d 468, 480 (6th Cir. 2001). Here, the added charges were more severe, as they added a mandatory consecutive two-year term. No other counts for which O'Lear had been charged carried a mandatory minimum term.

This Court found vindictive prosecution in *United States v. LaDeau*, 734 F.3d 561 (6th Cir. 2013), where the Government added a charge that increased the mandatory minimum sentence from 0 to 5 years. In *LaDeau*, the defendant was charged with possession of child pornography. He won a motion to suppress, which led the Government to supersede with a charge of conspiracy to receive child pornography, which raised the statutory sentencing range from 0-10 year to 5-20. Although the Court recognized the Government's "broad discretion" to indict, the Court found "there is little reason to suspect that the prosecutor's view of LaDeau's case changed significantly between the two indictments, given that the government already possessed all of the relevant evidence that supported the superseding

indictment well before procuring the first indictment." *Id.* at 568.  Thus, the Government was prevented from pursing the more onerous charges.

Although in *Bordenkircher v. Hayes*, 434 U.S. 357, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978), the Supreme Court determined that a prosecutor may add charges later in response to a defendant's decision to proceed to trial, here, the charges added increased the mandatory minimum sentence based upon conduct already known to the Government.  *Bordenkircher* does not foreclose this claim.

"A prosecutor who adds on extra charges after the exercise of a procedural right is arguably acting less vindictively than a prosecutor who substitutes a more severe charge for a less severe one." *United States v. Andrews*, 633 F.2d 449, 454 (6th Cir. 1980)(en banc).  Here, by adding charges that were more severe, based upon conduct known to the Government since the start of the case and which conduct was already contained in the indictment, the Government acted vindictively. The convictions on those two counts must be vacated.

## CONCLUSION

For the foregoing reasons, O'Lear respectfully requests this Court vacate

his convictions and/or sentence and remand for further proceedings consistent

with the arguments made herein.

Respectfully Submitted,

DEBORAH L. WILLIAMS
Federal Public Defender

 /s/ *Kevin M. Schad*
Kevin M. Schad
Attorney for Appellant
Appellate Director
Office of the Federal Public Defender
Southern District of Ohio
250 E. Fifth St.
Suite 350
Cincinnati OH 45202
(513) 929-4834
Fax (513) 929-4842
Kevin_schad@fd.org

## CERTIFICATE OF COMPLIANCE

Counsel hereby certifies that the foregoing brief complies with the type-volume limitation provided in Federal Rule of Appellate Procedure 32(a)(7)(B). The relevant portions of the foregoing brief contain 7386 words in Century Schoolbook (14-point) type. The word processing software used to prepare this brief was Microsoft Office 365.

/s/ *Kevin M. Schad*
Kevin Schad
Counsel for Appellant

## CERTIFICATE OF SERVICE

I hereby certify that on March 2, 2023, I electronically filed the

foregoing with the Clerk of the United States Court of Appeals for the Sixth

Circuit using the CM/ECF system, which will send notification of such filing

to the following at their e-mail addresses on file with the Court:

Assistant United States Attorney Laura McMullen
Ford


/s/ *Kevin M. Schad*
Kevin Schad
Attorney for Appellant

## DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS

| District Court Docket Number | Page ID# | Description of Document |
|---|---|---|
| 1 | 1-15 | Indictment |
| 27 | 99-113 | Superseding Indictment |
| — | — | Order [non document] 1.24.22 |
| 32 | 169-173 | Defendant's Objection |
| 34 | 176-184 | Government Response |
| 35 | 185-190 | Opinion & Order |
| 40 | 202-204 | Stipulations |
| 57 | 522-549 | Jury Verdict |
| 63 | 655-661 | Sentencing Memorandum - defense |
| 65 | 672-680 | Sentencing Memorandum - USA |
| 69 | 695-702 | Judgment |

| 71 | **707** | Notice of Appeal |
|----|---------|------------------|
| 87 | **775-809** | Transcript Sentencing 9.29.22 |
| 90 | **843-857** | Transcript Pretrial 9.9.21 |
| 92 | **997-1146** | Transcript Trial 4.19.22 |
| 93 | **1158-1321** | Transcript Trial 4.20.22 |
| 94 | **1331-1547** | Transcript Trial 4.21.22 |
| 95 | **1556-1830** | Transcript Trial 4.22.22 |
| 96 | **1841-1969** | Transcript Trial 4.25.22 |